IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALLIN HOLLAND                          :

                                       :

    v.                                 :   Civil Action No. DKC 09-2737

                                       :

PRINCE GEORGE'S COUNTY,
MARYLAND, et al.                       :

## MEMORANDUM OPINION

Presently pending and ready for resolution are (1) Plaintiff Allin Holland's motion for summary judgment (ECF No. 20) and (2) the cross-motion for summary judgment filed by Defendant Prince George's County's (ECF No. 21). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion for summary judgment will be denied and Defendant's cross-motion for summary judgment will be granted in part and denied in part.

## I.  Background

The following facts are uncontroverted unless otherwise noted. Plaintiff Allin Holland has been disabled since 2005 when his right leg was amputated below the knee. (ECF No. 21, Holland Dep., at 13). Plaintiff walks with the assistance of a prosthesis and also regularly uses crutches. (*Id*. at 13–14). On January 22, 2007, Plaintiff arrived at the Prince George's

County Correctional Center. (*Id.* at 10).[1] Due to Plaintiff's medical disability, the county assigned him to the medical observation room. (*Id.*). Plaintiff was told that Prince George's County does not allow inmates to have crutches, but while in the medical observation room, the county provided Plaintiff with a wheelchair. (*Id.* at 16; ECF No. 21-5, Pl.'s Answer to Def.'s Interrog., at 3–4).

On January 25, 2007, Plaintiff was transferred to housing unit H-12, which was not a handicap accessible facility. (ECF No. 21-2, at 12; ECF No. 21-5, at 4). While in this facility, Plaintiff did not have access to crutches or a wheelchair. (ECF No. 21-2, at 16–17; ECF No. 21-5, at 4). Plaintiff claims that he notified unnamed correctional staff on at least two occasions that he needed facilities with handicapped access and on both occasions was told to "step away from his desk." (ECF No. 21-2, at 17; ECF No. 21-5, at 8).

After notifying the staff of his concerns, Plaintiff attempted to take a shower. (ECF No. 21-2, at 17–18; ECF No. 21-5, at 4). The parties disagree as to whether Plaintiff entered the shower with his prosthesis. Defendant claims that Plaintiff left his prosthesis by his bedside and

---

[1] The summary judgment record contains no details to explain the reason for Plaintiff's detention. The complaint recites that Plaintiff came from the Calvert County Jail.

entered the shower on one leg. Plaintiff claims that he entered the shower area with his prosthesis on, and once inside, he removed the prosthesis and placed it outside the shower so that it would not get wet. (ECF No. 21-2, at 19). In any event, Plaintiff did not have his prosthesis when he left the shower stall and, as a result, had to "hop" out of the shower. While hopping over the shower ledge, Plaintiff slipped and suffered temporary loss of consciousness, pain in his back and hips, a headache, and pain throughout his left leg. (ECF No. 21-5, at 5).

On September 22, 2009, Plaintiff commenced this three-count action for damages arising from his treatment while incarcerated against Prince George's County, Maryland, and two unidentified individuals referred to as Officer "John Doe" and Dr. "Richard Roe" in the Circuit Court for Prince George's County. (ECF No. 2). Plaintiff had been released from the detention center by this time and listed his address in the complaint in Lusby, Maryland. (*Id.*). In count I, Plaintiff claims that the acts of all Defendants violated his rights guaranteed under Article 24 of the Maryland Declaration of Rights. In count II, Plaintiff claims pursuant to 42 U.S.C. § 1983 that the Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. In count III, Plaintiff claims that Defendants violated the Americans with

Disabilities Act ("ADA") in designing, constructing, and maintaining inaccessible showers. On October 21, 2009, Defendant Prince George's County, Maryland, removed this case to the United States District Court pursuant to federal question jurisdiction. (ECF No. 1). On May 17, 2010, Plaintiff filed a motion for summary judgment on liability. (ECF No. 20). On June 3, 2010, Defendant Prince George's County filed a cross-motion for summary judgment, a motion to dismiss the unnamed Defendants, and a response in opposition to Plaintiff's motion for summary judgment. (ECF No. 21).

## II. Standard of Review.

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *See Scott v. Harris,* 550 U.S. 372, 377 (2007); *Emmett,* 532 F.3d at 297. A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. *Celotex Corp.,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Id.* Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson,* 477 U.S. at 254; *Celotex Corp.,* 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney,* 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

When faced with cross-motions for summary judgment, as in this case, the court must consider "each motion separately on its own merits to determine whether either of the parties

deserves judgment as a matter of law." *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.), *cert. denied,* 540 U.S. 822 (2003) (internal quotation marks omitted); *see also havePower, LLC v. Gen. Elec. Co.,* 256 F.Supp.2d 402, 406 (D.Md. 2003)(citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3[d] ed. 1983)). The court reviews each motion under the familiar standard for summary judgment. The court must deny both motions if it finds there is a genuine issue of material fact, "[b]ut if there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the court will render judgment." 10A Federal Practice & Procedure § 2720.

### III. Defendant's Motion for Summary Judgment.

Defendant Prince George's County asserts that it is entitled to summary judgment because: (1) Plaintiff has failed to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e, (ECF No. 21, at 9–10); (2) Plaintiff has failed to establish discriminatory intent for his ADA claim, (*id.* at 8); (3) Plaintiff has failed to plead a policy, practice, or custom that would attach liability to the county under 42 U.S.C. § 1983, and even if pled, Plaintiff cannot demonstrate that anyone acted with deliberate indifference to his medical needs, (*id.* at 5); and (4) Plaintiff

has failed to plead sufficiently a due process violation under the Maryland Constitution. (*id.* at 7–8).

## A. Exhaustion of Administrative Remedies under the Prison Litigation Reform Act.

The Prison Litigation Reform Act (PLRA) requires any prisoner confined in jail, prison, or other correctional facility to exhaust all administrative remedies before bringing an action under Section 1983. 42 U.S.C. § 1997e(a). A prisoner "means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). A former prisoner who has been released is no longer considered incarcerated or detained for the purposes of this section. *Cofield v. Bowser*, 247 F.App'x. 413, 414 (4th Cir. 2007)(unpublished opinion)(citing *Norton v. City of Marietta*, 432 F.3d 1145, 1150 (10th Cir. 2005) as collecting cases concluding that plaintiffs bringing civil actions to challenge prison conditions after their release are do not have to satisfy the exhaustion requirement of the PLRA); *accord*, *Cantley v. West Virginia Regional Jail and Correctional Facility Authority*, 783 F.Supp.2d 803, 819–820 (S.D.W.Va. 2010). It is the plaintiff's status at the time when the complaint is filed that is determinative. *Cofield*, 247 F.App'x at 414;

*Norton*, 432 F.3d at 1150. In *Cofield*, for example, although the plaintiff apparently had signed the complaint while incarcerated, because it was not filed until after his release and because it listed a private street address as his mailing address, the court concluded that the PLRA exhaustion requirement did not apply to him. 247 F.App'x at 414.

Failure to exhaust administrative remedies is an affirmative defense, and the burden is on the defendant to show that it applies. *Jones v. Black*, 549 U.S. 199, 211–212 (2007). Here, Defendant presents no evidence that Plaintiff was a prisoner at the time he filed his complaint. Plaintiff maintains that he was not incarcerated at the time when the complaint was filed. (ECF No. 22, at 6). And indeed Plaintiff's complaint lists an address in Lusby, Maryland, which is not the address of the Correctional Center. The complaint will not be dismissed for failure to exhaust administrative remedies.

### B. Count III – Title II of the Americans with Disabilities Act.

Pursuant to Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C.

§ 2132. To establish a violation under the ADA, a plaintiff must show that (1) he has a qualifying disability; (2) he is otherwise qualified to receive the benefits of a public service, program, or activity; and (3) he was excluded from the benefit based on his disability. *Constantine v. George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005)(citing *Baird* ex rel. *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999)).

The parties do not dispute that Plaintiff has an ADA recognized disability. In addition, as an inmate in Prince George's County, he was entitled to access to the prison showers and other facilities. The Supreme Court has held that the phrase "services, programs, or activities" in 42 U.S.C. § 12132 includes recreational, medical, educational, and vocational prison programs. *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). In *United States v. Georgia*, the Supreme Court further elaborated that the "deliberate refusal of prison officials to accommodate [a prisoner's] needs in such fundamentals as mobility, hygiene, [and] medical care . . . constituted" exclusion from participation in or denial of benefits of "the prison's services, programs, or activities." 546 U.S. 151, 157 (2006). The Fourth Circuit has also recognized prisoners' rights to conduct personal hygiene. *See Miller v. Hinton*, 2008 WL 3849765, 288 F.App'x. 901, 902 (4th Cir. 2008)(finding that the defendant reasonably

accommodated the plaintiff by giving him the opportunity to receive such services as conducting personal hygiene or engaging in recreation); *see also Brown v. Va. Dept. of Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *9 (W.D.Va. Jan. 9, 2009) (dismissing the plaintiff's ADA claim in part because the defendants did not deny the plaintiff the opportunity to receive services, such as conducting personal hygiene).

Defendant contends that Plaintiff cannot show that he was excluded from a benefit based on his disability because he has not shown that the prison officials had a discriminatory intent. (ECF No. 21, at 8). Although Plaintiff must show intentional discrimination to recover compensatory damages under the ADA, *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526, 533–34 (1999), Plaintiff need not show that Defendant harbored a discriminating animus towards him. *Proctor v. Prince George's Hosp. Ctr.*, 32 F.Supp.2d 820, 829 (D.Md. 1998)(quoting *Bartlett v. New York State Bd. of Law Exam'rs.*, 970 F.Supp. 1094 (S.D.N.Y. 1997)). "Rather, intentional discrimination is shown by an intentional, or willful, violation of the Act itself." *Id.* To survive summary judgment, Plaintiff must demonstrate that Defendant "willfully with[eld] . . . the reasonable accommodations to which [Plaintiff] was entitled to under the law." *Id.*

Plaintiff has submitted sufficient evidence to create a genuine issue of material fact as to whether Defendant willfully

withheld the reasonable hygiene accommodations to which he was entitled. First, Plaintiff's evidence would support a finding that Defendant knew of his disability and his request for an accommodation. Plaintiff testified that he timely notified at least two correctional officers that he needed handicapped accessible shower facilities.[2] In addition, the prison facility was well aware that Plaintiff's right leg had been amputated, and, thus, was on notice that he would likely need an accommodation to access certain facilities.

A prison facility, however, is not required to provide reasonable accommodations to an inmate if doing so would fundamentally alter the prison's services or impose an undue burden. *Miller*, 288 F.App'x. at 903 (quoting *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1082 (11th Cir. 2007)). Here, Plaintiff's evidence indicates that Defendant could have reasonably accommodated Plaintiff by returning him to the medical unit. Defendant does not contend that such a move was not possible, but instead argues that it did not have the requisite discriminatory intent in not doing so. Defendant's argument is unavailing because, as noted, the requirement of

---

[2] While Plaintiff has failed to produce the names of either of the two correctional officers, the veracity of Plaintiff's assertions is decided by the fact finder, and thus, is sufficient to survive summary judgment.

discriminatory intent is satisfied by a showing of an intentional violation of the Act. *Proctor*, 32 F.Supp.2d at 829.

C.        **Count II – 42 U.S.C. § 1983.**

Under 42 U.S.C. § 1983, a plaintiff must allege: "(1) a deprivation of a constitutional right or some right secured by the laws of the United States, and (2) that the deprivation was caused by a state actor." *West v. Atkins*, 487 U.S. 42, 48 (1988). A governmental entity cannot be held liable under Section 1983 on a theory of *respondeat superior*. *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978). Instead, to find a municipality liable as a tortfeasor, its official policy or custom must have inflicted the injury. *Id.* at 694. The government policy or custom need not have received formal approval through the government's official decision making channels to subject the municipality to liability. *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 522 (4th Cir. 2000). Rather, a municipality will be adjudged liable if the "alleged constitutional deprivation is caused by the official actions of those individuals whose edicts or acts may fairly be said to represent official policy." *Id.* at 523 (citing *Monell*, 436 U.S. at 694).

To establish that the deprivation was caused by a state actor, Plaintiff must provide adequate notice to Defendant by pleading a specific policy or custom as the cause of his injury.

*Flanagan v. Anne Arundel Cnty.*, 593 F.Supp.2d 803, 810 (D.Md. 2009). A plaintiff may demonstrate a policy or custom by showing either: (1) "an express policy, such as a written ordinance or regulation;" (2) "the decisions of a person with policymaking authority;" (3) "an omission, such as a failure to properly train officers, that manifests a deliberate indifference to the rights of citizens;" or (4) "a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

The complaint alleges that "[t]he acts of the defendants," specifically placing Plaintiff in a non-handicapped accessible housing unit without his crutches, "constituted conduct under color of state law which deprived plaintiff of rights, privileges and immunities secured by the Constitution and laws of the United States." (ECF No. 2 ¶¶ 8, 17). Even under the liberal notice pleading standard for section 1983 actions, *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), a plaintiff must adequately plead and prove the existence of an official policy or custom. *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994). Failure to point to such a policy or custom is insufficient to state a claim because it does not provide

Defendant with adequate notice with which to frame a response. *Flanagan*, 593 F. Supp. 2d at 810.

The complaint alleges that Prince George's County is responsible for operating the Correctional Center in compliance with federal and state constitutions, and applicable laws and regulations. It also alleges that Plaintiff arrived at the center with crutches, but was not allowed to have them or a wheelchair while in a regular housing unit. In his opposition, Plaintiff submits that Defendant's policy or custom "was placing handicapped individuals into a non-handicapped accessible unit." (ECF No. 22, at 2). The allegations concerning the responses of those to whom Plaintiff complained indicate that they had no discretion to do other than direct Plaintiff to make do in the situation. Thus, the policy alleged was one of the County to assign people like Plaintiff to a regular housing unit, but deprive them of crutches or wheelchair assistance.

Plaintiff argues that the County's adherence to this policy constituted deliberate indifference to a serious medical need in violation of his Fourteenth and/or Eighth Amendment rights. Claims of deliberate indifference to medical needs have both an objective and subjective component. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). First a plaintiff must prove that the medical condition or injury at issue was objectively serious. *Id.*; *Hudson* v. McMillian, 503 U.S. 1, 9 (1992);

14

*Estelle v. Gamble*, 429 U.S. 97, 105 (1976). A "'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)(quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). Second, a plaintiff must satisfy the subjective component by showing that government acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The subjective standard of deliberate indifference requires that a government "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and it must also draw the inference." *Farmer*, 511 U.S. at 837. The Fourth Circuit has held that to satisfy this requirement a plaintiff must show that the officials had "actual knowledge of the risk of harm" and "must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate arising from his medical needs." *Iko*, 535 F.3d at 241.

As discussed above, the County was aware of Plaintiff's condition and the limitations of his mobility. Plaintiff's argument is that despite its knowledge thereof, the County policy resulted in his placement in a facility that was not equipped to accommodate his status and this action demonstrated deliberate indifference to his needs. Defendant has not shown

that there is no evidence upon which a reasonable jury could agree with Plaintiff.

### D.   Count I – Article 24 of the Maryland Declaration of Rights.

Article 24 of the Maryland Declaration of Rights provides "[t]hat no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Article 24 is Maryland's counterpart to both the due process and equal protection clauses of the Fourteenth Amendment. *Alvarez v. Motor Vehicle Admin.*, 402 Md. 727, 737 (2008). As a result, Article 24 is read *in pari materia* with the Fourteenth Amendment, and Supreme Court precedent is considered highly persuasive. *Tyler v. City of College Park*, 415 Md. 475, 499 (2010). There is not complete overlap between this claim and the Plaintiff's Section 1983 claim because under Maryland law, a municipality may be held liable under the doctrine of *respondeat superior* for violations of the state constitution committed by the municipality's agents or employees within the scope of their employment. *See DiPino v. Davis*, 354 Md. 18, 51-52 (1999). Thus in addition to potential liability under Article 24 for its policy, the County may be liable for the acts its employees.

Defendant contends that Plaintiff's Article 24 claim still fails because only pretrial detainees can bring claims alleging violations of the Fourteenth Amendment, or its Maryland state law counterpart Article 24, and Plaintiff was not a pretrial detainee. (ECF No. 21-1, at 5-7). Defendant argues that Plaintiff can only bring his claim under the Eighth Amendment, whose protections do not overlap with those provided by Article 24 of the Maryland Declaration of Rights.[3] (*Id.*). Defendant does note that the same standard, whether a government official has been deliberately indifferent to any of the plaintiff's serious medical needs, is applied to evaluate medical needs claims under both the Eighth and Fourteenth Amendment. (*Id.* at n. 1)(citing *Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). Plaintiff has not directly responded to this argument and simply maintains that because he presented sufficient evidence of a violation of the Fourteenth Amendment to preclude summary judgment on the Section 1983 claim summary judgment must also be denied on his claim under Article 24. (ECF No. 22, at 4).

---

[3] Defendant does not mention that Article 25 of the Maryland Declaration of Rights provides the same protection from cruel and unusual punishment as the Eighth Amendment. Plaintiff's complaint did not allege any violations of Article 25, but could be amended to include such claims if appropriate.

From the record presented, the court is unable to discern Plaintiff's status during his stay at the Correctional Center and as a result cannot state conclusively that Plaintiff was not a pretrial detainee. If he was a pretrial detainee then his claim was properly brought under Article 24; if not then Plaintiff may need to amend his complaint to bring a claim under Article 25 of the Maryland Declaration of Rights, the counterpart to the Eighth Amendment. Because the standard for evaluating the claim under either Article is the same, however, summary judgment could only be granted at this juncture if Defendant is correct that Plaintiff has produced insufficient evidence to sustain a medical needs claim under either Article 24 or 25.[4]

Defendant argues that Plaintiff's condition was not serious and points to the fact that Plaintiff had sufficient mobility to play basketball earlier in the day and was generally mobile with his prosthesis. (ECF No. 21-1, at 5-6). Defendant also contends that Plaintiff has not offered any evidence of deliberate

---

[4] The parties have analyzed the claim under the rubric of a medical needs claim. It may be more appropriately characterized as a condition of confinement claim. *See e.g., Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)("a two-pronged showing is necessary to demonstrate a . . . violation with respect to prison conditions: (1) a serious deprivation of a basic human need and (2) deliberate indifference to prison conditions on the part of prison officials.) Because the same analysis is used in both contexts, it is unnecessary to make a firm distinction at this point.

indifference. Plaintiff maintains in response that his condition was serious and notes that Defendant's account neglects to mention that Plaintiff could not use his prosthesis while taking a shower because it cannot get wet. (ECF Nos. 20-2, at 3; 22, at 3-4).

In addition to liability stemming from the County policy discussed above, Plaintiff has produced evidence that individual prison officials' actions may render the County liable under the *respondeat superior* doctrine. Plaintiff has pointed to his own testimony and discovery responses stating that he alerted unidentified guards on two occasions to the fact that the showers in Housing Unit H-12 were not handicap accessible. (ECF Nos. 20-3, at 4; 21-2, at 17-18). The reasonableness of the guards' response to that information and whether they were acting within the scope of their employment are questions of fact for the jury to determine.

Defendant's motion for summary judgment as to Prince George's County will be denied on all counts.

**E. Motion To Dismiss Officer John Doe and Dr. Richard Roe.**

Defendant has moved to dismiss Officer John Doe and Dr. Richard Roe as defendants. As Plaintiff has failed to identify these defendants or submit evidence establishing their liability by the close of discovery, Defendant's cross-motion for summary

judgment as to Officer John Doe and Dr. Richard Roe will be granted. *See Schiff v. Kennedy*, 691, 198 (4th Cir. 1982)(noting that if the true identity of an unnamed party cannot be discovered through discovery, the court should dismiss the action).

## IV. Plaintiff's Motion for Summary Judgment on Liability.

Plaintiff seeks summary judgment on all three counts of his complaint. While Plaintiff has identified sufficient evidence to defeat Defendant's motion for summary judgment, there are genuine disputes of fact that preclude judgment for Plaintiff at this time. With respect to Plaintiff's ADA claim in count III, a genuine dispute of material fact exists as to whether Prince George's County willfully withheld access to handicapped accessible shower facilities by placing Plaintiff in housing unit H-12. With respect to Plaintiff's § 1983 claim in count II, a genuine dispute of material fact exists as to whether Prince George's County had a policy to assign people like Plaintiff to a regular housing unit, but deprive them of crutches or wheelchair assistance. With respect to Plaintiff's Article 24 claim in count I, among other issues a genuine dispute of material fact remains regarding Plaintiff's status during his detention.

## V.   Conclusion

For the foregoing reasons, the motions for summary judgment will be denied.  The claims against Officer John Doe and Doctor Richard Roe will be dismissed.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge